772 So.2d 1220 (2000)
PALM BEACH COUNTY CANVASSING BOARD, Petitioner,
v.
Katherine HARRIS, etc., et al., Respondents.
Volusia County Canvassing Board, et al., Appellants,
v.
Katherine Harris, etc., et al., Appellees.
Florida Democratic Party, Appellant,
v.
Katherine Harris, etc., et al., Appellees.
Nos. SC00-2346, SC00-2348 and SC00-2349.
Supreme Court of Florida.
November 21, 2000.
*1223 Denise D. Dytrych, Palm Beach County Attorney, and James C. Mize, Jr., Andrew J. McMahon and Gordon Selfridge, Assistant Palm Beach County Attorneys, West Palm Beach, Florida; Bruce Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, Florida; and Robert A. Butterworth, Attorney General, pro se, Paul F. Hancock, Deputy Attorney General, and George Waas, Assistant Attorney General, Tallahassee, Florida, and Cecile Luttmer Dykas, Assistant Attorney General, Fort Lauderdale, for Petitioners in No. SC00-2346.
Deborah K. Kearney, General Counsel, and Kerey Carpenter, Assistant General Counsel, Florida Department of State, Tallahassee, Florida; and Joseph P. Klock, Jr., Jonathan Sjostrom, Victoria L. Weber, John W. Little, III, Donna E. Blanton, Gabriel E. Nieto, Elizabeth C. Daley, Arthur R. Lewis, Jr. and Elizabeth J. Maykut of Steel, Hector & Davis, LLP, Tallahassee, Florida, for the Elections Canvassing Commission; and Terrell C. Madigan, Harold R. Mardenborough, Jr., Christopher Barkas and Matt Butler of McFarlain, Wiley, Cassedy & Jones, P.A., Tallahassee, Florida, for Respondents in No. SC00-2346, and Appellees in Nos. SC00-2348 and SC00-2349.
John D.C. Newton, II of Berger Davis & Singerman, Tallahassee, Florida; Mitchell W. Berger of Berger Davis & Singerman, Fort Lauderdale, Florida; W. Dexter Douglass of the Douglass Law Firm, Tallahassee, Florida; David Boies of Boies, Schiller & Flexner, LLP, Armonk, New *1224 York; Lyn Utrecht and Eric Kleinfeld of Ryan, Phillips, Utrecht and MacKinnon, Washington, DC; Andrew J. Pincus and Ronald A. Klain, Gore/Lieberman Recount Committee, Washington, DC; and Laurence Tribe, Cambridge, Massachusetts; and Karen Gievers, of Karen Gievers, P.A., Tallahassee, Florida, for Albert A. Gore and the Florida Democratic Executive Committee, Intervenors/Petitioners in No. SC00-2346, and Appellant in No. SC00-2349.
Edward A. Dion, County Attorney for Broward County, Norman M. Ostrau, Deputy County Attorney, Andrew J. Meyers, Chief Appellate Counsel, and Tamara M. Scrudders and Jose Arrojo, Assistant County Attorneys, Fort Lauderdale, Florida; and Samuel S. Goren, James A. Cherof and Michael D. Cirullo of Josias, Goren, Cherof, Doody & Ezrol, P.A., Fort Lauderdale, Florida, for The Broward County Canvassing Board and Jane Carroll, as Broward County Supervisor of Elections, Intervenors/Petitioners in No. SC00-2346, and Intervenors in Nos. SC00-2348 and SC00-2349.
Barry Richard of Greenberg, Traurig, P.A., Tallahassee, Florida; Michael A. Carvin of Cooper, Carvin & Rosenthal, PLLC, Washington, DC; Benjamin L. Ginsberg of Patton, Boggs, LLP, Washington, DC; Alex M. Azar II of Wiley, Rein & Fielding, Washington, DC; George J. Terwilliger, III and Timothy E. Flanigan of White & Case, LLP, Washington, DC; and R. Ted Cruz, Bush-Cheney Recount Committee, Austin, Texas, for Honorable George W. Bush, Intervenor/Respondent in No. SC00-2346, and Intervenor in Nos. SC00-2348 and SC00-2349.
John D.C. Newton, II of Berger Davis & Singerman, Tallahassee, Florida; Mitchell W. Berger of Berger Davis & Singerman, Fort Lauderdale, Florida; W. Dexter Douglass of the Douglass Law Firm, Tallahassee, Florida; David Boies of Boies, Schiller & Flexner, LLP, Armonk, New York; Lyn Utrecht and Eric Kleinfeld of Ryan, Phillips, Utrecht and MacKinnon, Washington, DC; Andrew J. Pincus and Ronald A. Klain, Gore/Lieberman Recount Committee, Washington, DC; and Laurence Tribe, Cambridge, Massachusetts; and Karen Gievers, of Karen Gievers, P.A., Tallahassee, Florida; Denise D. Dytrych, Palm Beach County Attorney, and James C. Mize, Jr., Andrew J. McMahon and Gordon Selfridge, Assistant Palm Beach County Attorneys, West Palm Beach, Florida; Bruce Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale,; and Robert A. Butterworth, Attorney General, pro se, Paul F. Hancock Deputy Attorney General, and George Waas, Assistant Attorney General, Tallahassee, Florida, and Cecile Luttmer Dykas, Assistant Attorney General, for Albert A. Gore and the Canvassing Board for Palm Beach County, Florida, Appellants in No. SC00-2348.
W. Dexter Douglass of the Douglass Law Firm, Tallahassee, Florida; John D.C. Newton, II of Berger Davis & Singerman, Tallahassee, Florida; Mitchell W. Berger of Berger Davis & Singerman, Fort Lauderdale, Florida; David Boies of Boies, Schiller & Flexner, LLP, Armonk, New York; Karen Gievers, of Karen Gievers, P.A., Tallahassee, Florida; Lyn Utrecht and Eric Kleinfeld of Ryan, Phillips, Utrecht and MacKinnon, Washington, DC; Andrew J. Pincus and Ronald A. Klain, Washington, DC; and Laurence Tribe, Cambridge, Massachusetts, for Appellants in No. SC00-2349.
Deborah K. Kearney, General Counsel, and Kerey Carpenter, Assistant General Counsel, Florida Department of State, Tallahassee, Florida; and Joseph P. Klock, Jr., Jonathan Sjostrom, Victoria L. Weber, John W. Little, III, Donna E. Blanton, Gabriel E. Nieto, Elizabeth C. Daley, Arthur R. Lewis, Jr. and Elizabeth J. Maykut of Steel, Hector & Davis, LLP, Tallahassee, Florida, for the Elections Canvassing Commission, for Appellees in No. SC00-2349.
*1225 PER CURIAM.
We have for review two related trial court orders appealed to the First District Court of Appeal, which certified the orders to be of great public importance requiring immediate resolution by this Court (Case Numbers SC00-2348 and SC00-2349). We have jurisdiction under article V, section 3(b)(5) of the Florida Constitution. For the reasons set forth in this opinion, we reverse the orders of the trial court.[1]

I. FACTS

A. The Election
On Tuesday, November 7, 2000, the State of Florida, along with the rest of the United States, conducted a general election for the President of the United States. The Division of Elections ("Division") reported on Wednesday, November 8, that George W. Bush, the Republican candidate, had received 2,909,135 votes, and Albert Gore Jr., the Democratic candidate, had received 2,907,351 votes. Because the overall difference in the total votes cast for each candidate was less than one-half of one percent of the total votes cast for that office (i.e., the difference was 1,784 votes), an automatic recount was conducted pursuant to section 102.141(4), Florida Statutes.[2] The recount resulted in a substantially reduced figure for the overall difference between the two candidates.
In light of the closeness of the election, the Florida Democratic Executive Committee on Thursday, November 9, requested that manual recounts be conducted in Broward, Palm Beach, and Volusia Counties pursuant to section 102.166, Florida Statutes (2000).[3] Pursuant to section 102.166(4)(d), the county canvassing boards of these counties conducted a sample manual recount of at least one percent of the ballots cast. Initial manual recounts demonstrated the following: In Broward County, a recount of one percent of the ballots indicated a net increase of four votes for Gore; and in Palm Beach County, a recount of four sample precincts yielded a net increase of nineteen votes for Gore. Based on these recounts, several of the county canvassing boards determined that the manual recounts conducted indicated "an error in the vote tabulation which could affect the outcome of the election." Based on this determination, several canvassing boards voted to conduct countywide manual recounts pursuant to section 102.166(5)(c).

B. The Appeal Proceedings
Concerned that the recounts would not be completed prior to the deadline set forth in section 102.111(1), Florida Statutes (2000), requiring that all county returns be certified by 5 p.m. on the seventh day after an election, the Palm Beach County Canvassing Board, pursuant to section 106.23, Florida Statutes (2000), sought an advisory opinion from the Division of Elections, requesting an interpretation of the deadline set forth in sections 102.111 and 102.112. The Division of Elections *1226 responded by issuing Advisory Opinion DE 00-10, stating that absent unforseen circumstances, returns from the county must be received by 5 p.m. on the seventh day following the election in order to be included in the certification of the statewide results.
Relying upon this advisory opinion, the Florida Secretary of State (the Secretary) issued a statement on Monday, November 13, 2000, that she would ignore returns of the manual recounts received by the Florida Department of State (the Department) after Tuesday, November 14, 2000, at 5:00 p.m. The Volusia County Canvassing Board (the Volusia Board) on Monday, November 13, 2000, filed suit in the Circuit Court of the Second Judicial Circuit in Leon County, Florida, seeking declaratory and injunctive relief, and the candidates and the Palm Beach County Canvassing Board (the Palm Beach Board), among others, were allowed to intervene. In its suit, the Volusia Board sought a declaratory judgment that it was not bound by the November 14, 2000, deadline and also sought an injunction barring the Secretary from ignoring election returns submitted by the Volusia Board after that date.
The trial court ruled on Tuesday, November 14, 2000, that the deadline was mandatory but that the Volusia Board may amend its returns at a later date and that the Secretary, after "considering all attendant facts and circumstances," may exercise her discretion in determining whether to ignore the amended returns.[4] Later that day, the Volusia Board filed a notice of appeal of this ruling to the First District Court of Appeal, and the Palm Beach Board filed a notice of joinder in the appeal.
Subsequent to the circuit court's order, the Secretary announced that she was in receipt of certified returns (i.e., the returns resulting from the initial recount) from all counties in the State. The Secretary then instructed Florida's Supervisors of Elections (Supervisors) that they must submit to her by 2 p.m., Wednesday, November 15, 2000, a written statement of "the facts and circumstances" justifying any belief on their part that they should be allowed to amend the certified returns previously filed. Four counties submitted their statements on time. After considering the reasons in light of specific criteria,[5] *1227 the Secretary on Wednesday, November 15, 2000, rejected the reasons and again announced that she would not accept the amended returns but rather would rely on the earlier certified totals for the four counties. The Secretary further stated that after she received the certified returns of the overseas absentee ballots from each county, she would certify the results of the presidential election on Saturday, November 18, 2000.
On Thursday, November 16, 2000, the Florida Democratic Party and Albert Gore filed a motion in Circuit Court of the Second Judicial Circuit in Leon County, Florida, seeking to compel the Secretary to accept amended returns. After conducting a hearing, the court denied relief in a brief order dated Friday, November 17, 2000.[6] That day, both the Democratic Party and Gore appealed to the First District Court of Appeal, which consolidated the appeals with the Volusia Board's appeal already pending there, and certified both of the underlying trial court orders to this Court based on the Court's "pass-through" jurisdiction.[7] By orders dated Friday, November 17, 2000, this Court accepted jurisdiction, set an expedited briefing schedule, and enjoined the Secretary and the Elections Canvassing Commission (Commission) from certifying the results of the presidential election until further order of this Court.[8]

II. GUIDING PRINCIPLES
Twenty-five years ago, this Court commented that the will of the people, not a hyper-technical reliance upon statutory provisions, should be our guiding principle in election cases:
[T]he real parties in interest here, not in the legal sense but in realistic terms, are *1228 the voters. They are possessed of the ultimate interest and it is they whom we must give primary consideration. The contestants have direct interests certainly, but the office they seek is one of high public service and of upmost importance to the people, thus subordinating their interest to that of the people. Ours is a government of, by and for the people. Our federal and state constitutions guarantee the right of the people to take an active part in the process of that government, which for most of our citizens means participation via the election process. The right to vote is the right to participate; it is also the right to speak, but more importantly the right to be heard. We must tread carefully on that right or we risk the unnecessary and unjustified muting of the public voice. By refusing to recognize an otherwise valid exercise of the right of a citizen to vote for the sake of sacred, unyielding adherence to statutory scripture, we would in effect nullify that right.
Boardman v. Esteva, 323 So.2d 259, 263 (Fla.1975) (emphasis added). We consistently have adhered to the principle that the will of the people is the paramount consideration.[9] Our goal today remains the same as it was a quarter of a century ago, i.e., to reach the result that reflects the will of the voters, whatever that might be. This fundamental principle, and our traditional rules of statutory construction, guide our decision today.

III. ISSUES
The questions before this Court include the following: Under what circumstances may a Board authorize a countywide manual recount pursuant to section 102.166(5); must the Secretary and Commission accept such recounts when the returns are certified and submitted by the Board after the seven day deadline set forth in sections 102.111 and 102.112?[10]

IV. LEGAL OPINION OF THE DIVISION OF ELECTIONS
The first issue this Court must resolve is whether a County Board may conduct a countywide manual recount where it determines there is an error in vote tabulation that could affect the outcome of the election. Here, the Division issued opinion DE 00-13, which construed the language "error in vote tabulation" to exclude the situation where a discrepancy between the original machine return and sample manual recount is due to the manner in which a ballot has been marked or punched.
Florida courts generally will defer to an agency's interpretation of statutes and rules the agency is charged with implementing and enforcing.[11] Florida courts, however, will not defer to an agency's opinion that is contrary to law.[12] We conclude that the Division's advisory opinion regarding vote tabulation is contrary to law because it contravenes the plain meaning of section 102.166(5).
Pursuant to section 102.166(4)(a), a candidate who appears on a ballot, a political committee that supports or opposes an issue that appears on a ballot, or a political party whose candidate's name appeared on the ballot may file a written request with the County Board for a manual recount. This request must be filed with the Board *1229 before the Board certifies the election results or within seventy-two hours after the election, whichever occurs later.[13] Upon filing the written request for a manual recount, the canvassing board may authorize a manual recount.[14] The decision whether to conduct a manual recount is vested in the sound discretion of the Board.[15] If the canvassing board decides to authorize the manual recount, the recount must include at least three precincts and at least one percent of the total votes cast for each candidate or issue, with the person who requested the recount choosing the precincts to be recounted.[16] If the manual recount indicates an "error in the vote tabulation which could affect the outcome of the election," the county canvassing board "shall":
(a) Correct the error and recount the remaining precincts with the vote tabulation system;
(b) Request the Department of State to verify the tabulation software; or

(c) Manually recount all ballots.
§ 102.166(5)(a)-(c), Fla. Stat. (2000) (emphasis added).
The issue in dispute here is the meaning of the phrase "error in the vote tabulation" found in section 102.166(5). The Division opines that an "error in the vote tabulation" only means a counting error resulting from incorrect election parameters or an error in the vote tabulating software. We disagree.
The plain language of section 102.166(5) refers to an error in the vote tabulation rather than the vote tabulation system. On its face, the statute does not include any words of limitation; rather, it provides a remedy for any type of mistake made in tabulating ballots. The Legislature has utilized the phrase "vote tabulation system" and "automatic tabulating equipment" in section 102.166 when it intended to refer to the voting system rather than the vote count. Equating "vote tabulation" with "vote tabulation system" obliterates the distinction created in section 102.166 by the Legislature.
Sections 101.5614(5) and (6) also support the proposition that the "error in vote tabulation" encompasses more than a mere determination of whether the vote tabulation system is functioning. Section 101.5614(5) provides that "[n]o vote shall be declared invalid or void if there is a clear indication of the intent of the voter as determined by the canvassing board." Conversely, section 101.5614(6) provides that any vote in which the Board cannot discern the intent of the voter must be discarded. Taken together, these sections suggest that "error in the vote tabulation" includes errors in the failure of the voting machinery to read a ballot and not simply errors resulting from the voting machinery.
Moreover, section 102.141(4), which outlines the Board's responsibility in the event of a recount, states that the Board "shall examine the counters on the machines or the tabulation of the ballots cast in each precinct in which the office or issue appeared on the ballot and determine whether the returns correctly reflect the votes cast." § 102.141, Fla. Stat. (2000) (emphasis added). Therefore, an "error in the vote tabulation" includes a discrepancy between the number of votes determined by a voter tabulation system and the number of voters determined by a manual count of a sampling of precincts pursuant to section 102.166(4).
Although error cannot be completely eliminated in any tabulation of the ballots, our society has not yet gone so far as to place blind faith in machines. In almost all endeavors, including elections, humans routinely correct the errors of machines. For this very reason Florida law provides *1230 a human check on both the malfunction of tabulation equipment and error in failing to accurately count the ballots. Thus, we find that the Division's opinion DE 00-13 regarding the ability of county canvassing boards to authorize a manual recount is contrary to the plain language of the statute.
Having concluded that the county canvassing boards have the authority to order countywide manual recounts, we must now determine whether the Commission[17] must accept a return after the seven-day deadline set forth in sections 102.111 and 102.112 under the circumstances presented.

V. THE APPLICABLE LAW
The abiding principle governing all election law in Florida is set forth in article I, section 1, Florida Constitution:
SECTION 1. Political power.All political power is inherent in the people. The enunciation herein of certain rights shall not be construed to deny or impair others retained by the people.
Art. I, § 1, Fla. Const. The constitution further provides that elections shall be regulated by law:
SECTION 1. Regulation of elections.All elections by the people shall be by direct and secret vote. General elections shall be determined by a plurality of votes cast. Registration and elections shall, and political party functions may, be regulated by law; however, the requirements for a candidate with no party affiliation or for a candidate of a minor party for placement of the candidate's name on the ballot shall be no greater than the requirements for a candidate of the party having the largest number of registered voters.
Art. VI, § 1, Fla. Const. (emphasis added).
The Florida Election Code ("Code"), contained in chapters 97-106, Florida Statutes (2000), sets forth specific criteria regulating elections. The Florida Secretary of State is the chief election officer of the state and is charged with general oversight of the election system.[18] The Supervisor of Elections ("Supervisor") in each county is an elected official[19] and is charged with appointing two Election Boards for each precinct within the county prior to an election.[20] Each Election Board is composed of inspectors and clerks,[21] all of whom must be residents of the county,[22] and is charged with conducting the voting in the election, counting the votes,[23] and certifying the results to the Supervisor[24] by noon of the day following the election.[25] The County Canvassing Board ("Canvassing Board" or "Board"), which is composed of the Supervisor, a county court judge, and the chair of the board of county commissioners,[26] then canvasses the returns countywide,[27] reviews the certificates,[28] and transmits the returns for state and federal officers to the Florida Department of State ("Department") *1231 by 5:00 p.m. of the seventh day following the election.[29] No deadline is set for filing corrected, amended, or supplemental returns.
The Elections Canvassing Commission ("Canvassing Commission" or "Commission"), which is composed of the Governor, the Secretary of State, and the Director of the Division of Elections, canvasses the returns statewide, determines and declares who has been elected for each office, and issues a certificate of election for each office as soon as the results are compiled.[30] If any returns appear to be irregular or false and the Commission is unable to determine the true vote for a particular office, the Commission certifies that fact and does not include those returns in its canvass.[31] In determining the true vote, the Commission has no authority to look beyond the county's returns.[32] A candidate or elector can "protest" the returns of an election as being erroneous by filing a protest with the appropriate County Canvassing Board.[33] And finally, a candidate, elector, or taxpayer can "contest" the certification of election results by filing a post-certification action in circuit court within certain time limits[34] and setting forth specific grounds.[35]

VI. STATUTORY AMBIGUITY
The provisions of the Code are ambiguous in two significant areas. First, the time frame for conducting a manual recount under section 102.166(4) is in conflict with the time frame for submitting county returns under sections 102.111 and 102.112. Second, the mandatory language in section 102.111 conflicts with the permissive language in 102.112.

A. The Recount Conflict

Section 102.166(1) states that "[a]ny candidate for nomination or election, or any elector qualified to vote in the election related to such candidacy, shall have the right to protest the returns of the election as being erroneous by filing with the appropriate canvassing board a sworn, written protest." The time period for filing a protest is "prior to the time the canvassing board certifies the results for the office being protested or within 5 days after midnight of the date the election is held, whichever occurs later."
Section 102.166(4)(a), the operative subsection in this case, further provides that, in addition to any protest, "any candidate whose name appeared on the ballot ... or any political party whose candidates' names appeared on the ballot *1232 may file a written request with the county canvassing board for a manual recount" accompanied by the "reason that the manual recount is being requested." Section 102.166(4)(b) further provides that the written request may be made prior to the time the Board certifies the returns or within seventy-two hours after the election, whichever occurs later:[36]
(4)(a) Any candidate whose name appeared on the ballot, any political committee that supports or opposes an issue which appeared on the ballot, or any political party whose candidates' names appeared on the ballot may file a written request with the county canvassing board for a manual recount. The written request shall contain a statement of the reason the manual recount is being requested.
(b) Such request must be filed with the canvassing board prior to the time the canvassing board certifies the results for the office being protested or within 72 hours after midnight of the date the election was held, whichever occurs later.

§ 102.166, Fla. Stat. (2000) (emphasis added).
A Board "may" authorize a manual recount[37] and such a recount must include at least three precincts and at least one percent of the total votes cast for the candidate.[38] The following procedure then applies:
(5) If the manual recount indicates an error in the vote tabulation which could affect the outcome of the election, the county canvassing board shall:
(a) Correct the error and recount the remaining precincts with the vote tabulation system;
(b) Request the Department of State to verify the tabulation software; or
(c) Manually recount all ballots.
(6) Any manual recount shall be open to the public.
(7) Procedures for a manual recount are as follows:
(a) The county canvassing board shall appoint as many counting teams of at least two electors as is necessary to manually recount the ballots. A counting team must have, when possible, members of at least two political parties. A candidate involved in the race shall not be a member of the counting team.
(b) If a counting team is unable to determine a voter's intent in casting a ballot, the ballot shall be presented to the county canvassing board for it to determine the voter's intent.
§ 102.166, Fla. Stat. (2000).
Under this scheme, a candidate can request a manual recount at any point prior to certification by the Board and such action *1233 can lead to a full recount of all the votes in the county. Although the Code sets no specific deadline by which a manual recount must be completed, logic dictates that the period of time required to complete a full manual recount may be substantial, particularly in a populous county, and may require several days. The protest provision thus conflicts with section 102.111 and 102.112, which state that the Boards "must" submit their returns to the Elections Canvassing Commission by 5:00 p.m. of the seventh day following the election or face penalties. For instance, if a party files a pre-certification protest on the sixth day following the election and requests a manual recount and the initial manual recount indicates that a full countywide recount is necessary, the recount procedure in most cases could not be completed by the deadline in sections 102.111 and 102.112, i.e., by 5:00 p.m. of the seventh day following the election.

B. The "Shall" and "May" Conflict

In addition to the conflict in the above statutes, sections 102.111 and 102.112 contain a dichotomy. Section 102.111, which sets forth general criteria governing the State Canvassing Commission, was enacted in 1951 as part of the Code and provides as follows:
102.111 Elections Canvassing Commission.
(1) Immediately after certification of any election by the county canvassing board, the results shall be forwarded to the Department of State concerning the election of any federal or state officer. The Governor, the Secretary of State, and the Director of the Division of Elections shall be the Elections Canvassing Commission. The Elections Canvassing Commission shall, as soon as the official results are compiled from all counties, certify the returns of the election and determine and declare who has been elected for each office. In the event that any member of the Elections Canvassing Commission is unavailable to certify the returns of any election, such member shall be replaced by a substitute member of the Cabinet as determined by the Director of the Division of Elections. If the county returns are not received by the Department of State by 5 p.m. of the seventh day following an election, all missing counties shall be ignored, and the results shown by the returns on file shall be certified.
§ 102.111, Fla.Stat. (2000) (emphasis added).
The Legislature in 1989 revised chapter 102 to include section 102.112, which provides that returns not received after a certain date "may" be ignored and that members of the County Board "shall" be fined:
102.112 Deadline for submission of county returns to the Department of State; penalties.
(1) The county canvassing board or a majority thereof shall file the county returns for the election of a federal or state officer with the Department of State immediately after the certification of the election results. Returns must be filed by 5 p.m. on the 7th day following the first primary and general election and by 3 p.m. on the 3rd day following the second primary. If the returns are not received by the department by the time specified, such returns may be ignored and the results on file at that time may be certified by the department.
(2) The department shall fine each board member $200 for each day such returns are late, the fine to be paid only from the board member's personal funds. Such fines shall be deposited into the Election Campaign Financing Trust fund, created by s. 106.32.
(3) Members of the county canvassing board may appeal such fines to the Florida Elections Commission, which shall adopt rules for such appeals.
§ 102.112, Fla.Stat. (2000) (emphasis added).
The above statutes conflict. Whereas section 102.111 is mandatory, section *1234 102.112 is permissive. While it is clear that the Boards must submit returns by 5 p.m. of the seventh day following the election or face penalties, the circumstances under which penalties may be assessed are unclear.

VII. LEGISLATIVE INTENT
Legislative intentas always is the polestar that guides a court's inquiry into the provisions of the Florida Election Code.[39] Where the language of the Code is clear and amenable to a reasonable and logical interpretation, courts are without power to diverge from the intent of the Legislature as expressed in the plain language of the Code.[40] As noted above, however, chapter 102 is unclear concerning both the time limits for submitting the results of a manual recount and the penalties that may be assessed by the Secretary. In light of this ambiguity, the Court must resort to traditional rules of statutory construction in an effort to determine legislative intent.[41]
First, it is well-settled that where two statutory provisions are in conflict, the specific statute controls the general statute.[42] In the present case, whereas section 102.111 in its title and text addresses the general makeup and duties of the Elections Canvassing Commission, the statute only tangentially addresses the penalty for returns filed after the statutory date, noting that such returns "shall" be ignored by the Department. Section 102.112, on the other hand, directly addresses in its title and text both the "deadline" for submitting returns and the "penalties" for submitting returns after a certain date; the statute expressly states that such returns "may" be ignored and that dilatory Board members "shall" be fined. Based on the precision of the title and text, section 102.112 constitutes a specific penalty statute that defines both the deadline for filing returns and the penalties for filing returns thereafter and section 102.111 constitutes a nonspecific statute in this regard. The specific statute controls the non-specific statute.
Second, it also is well-settled that when two statutes are in conflict, the more recently enacted statute controls the older statute.[43] In the present case, the provision in section 102.111 stating that the Department "shall" ignore returns was enacted in 1951 as part of the Code. On the other hand, the penalty provision in section 102.112 stating that the Department "may" ignore returns was enacted in 1989 as a revision to chapter 102. The more recently enacted provision may be viewed as the clearest and most recent expression of legislative intent.
Third, a statutory provision will not be construed in such a way that it renders meaningless or absurd any other statutory provision.[44] In the present case, section 102.112 contains a detailed provision authorizing the assessment of fines against members of a dilatory County Canvassing Board. The fines are personal and substantial, i.e., $200 for each day the returns are not received. If, as the Secretary asserts, the Department were required to ignore all returns received after the statutory date, the fine provision would be meaningless. For example, if a Board simply completed its count late and if the returns were going to be ignored in any event, what would be the point in submitting the returns? The Board would simply *1235 file no returns and avoid the fines. But, on the other hand, if the returns submitted after the statutory date would not be ignored, the Board would have good reason to submit the returns and accept the fines. The fines thus serve as an alternative penalty and are applicable only if the Department may count the returns.
Fourth, related statutory provisions must be read as a cohesive whole.[45] As stated in Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992), "all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with another." In this regard we consider the provisions of section 102.166 and 102.168.
Section 102.166 states that a candidate, political committee, or political party may request a manual recount any time before the County Canvassing Board certifies the results to the Department and, if the initial manual recount indicates a significant error, the Board "shall" conduct a countywide manual recount in certain cases. Thus, if a protest is filed on the sixth day following an election and a full manual recount is required, the Board, through no fault of its own, will be unable to submit its returns to the Department by 5:00 p.m. on the seventh day following the election. In such a case, if the mandatory provision in section 102.111 were given effect, the votes of the county would be ignored for the simple reason that the Board was following the dictates of a different section of the Code. The Legislature could not have intended to penalize County Canvassing Boards for following the dictates of the Code.
And finally, when the Legislature enacted the Code in 1951, it envisioned that all votes cast during a particular election, including absentee ballots, would be submitted to the Department at one time and would be treated in a uniform fashion. Section 97.012(1) states that it is the Secretary's responsibility to "[o]btain and maintain uniformity in the application, operation, and interpretation of the election laws." Chapter 101 provides that all votes, including absentee ballots, must be received by the Supervisor no later than 7 p.m. on the day of the election. Section 101.68(2)(d) expressly states that "[t]he votes on absentee ballots shall be included in the total vote of the county." Chapter 102 requires that the Board submit the returns by 5 p.m. on the seventh day following the election.
The Legislature thus envisioned that when returns are submitted to the Department, the returns "shall" embrace all the votes in the county, including absentee ballots. This, of course, is not possible because our state statutory scheme has been superseded by federal law governing overseas voters;[46] overseas ballots must be counted if received no later than ten days following the election (i.e., the ballots do not have to be received by 7 p.m. of the day of the election, as provided by state law).[47] In light of the fact that overseas ballots cannot be counted until after the seven day deadline has expired, the mandatory language in section 102.111 has *1236 been supplanted by the permissive language of section 102.112.
Further, although county returns must be received by 5 p.m. on the seventh day following an election, the "official results" that are to be compiled in order to certify the returns and declare who has been elected must be construed in pari materia with section 101.5614(8), which specifies that "write-in, absentee and manually counted results shall constitute the official return of the election." (Emphasis added.)
Under this statutory scheme, the County Canvassing Boards are required to submit their returns to the Department by 5 p.m. of the seventh day following the election. The statutes make no provision for exceptions following a manual recount. If a Board fails to meet the deadline, the Secretary is not required to ignore the county's returns but rather is permitted to ignore the returns within the parameters of this statutory scheme. To determine the circumstances under which the Secretary may lawfully ignore returns filed pursuant to the provisions of section 102.166 for a manual recount, it is necessary to examine the interplay between our statutory and constitutional law at both the state and federal levels.

VIII. THE RIGHT TO VOTE
The text of our Florida Constitution begins with a Declaration of Rights, a series of rights so basic that the founders accorded them a place of special privilege.[48] The Court long ago noted the venerable role the Declaration plays in our tripartite system of government in Florida:
It is significant that our Constitution thus commences by specifying those things which the state government must not do, before specifying certain things that it may do. These Declarations of Rights ... have cost much, and breathe the spirit of that sturdy and self-reliant philosophy of individualism which underlies and supports our entire system of government. No race of hothouse plants could ever have produced and compelled the recognition of such a stalwart set of basic principles, and no such race can preserve them. They say to arbitrary and autocratic power, from whatever official quarter it may advance to invade these vital rights of personal liberty and private property, "Thus far shalt thou come, but no farther."
State v. City of Stuart, 97 Fla. 69, 120 So. 335, 347 (1929). Courts must attend with special vigilance whenever the Declaration of Rights is in issue.
The right of suffrage is the preeminent right contained in the Declaration of Rights, for without this basic freedom all others would be diminished. The importance of this right was acknowledged by the authors of the Constitution, who placed it first in the Declaration. The very first words in the body of the constitution are as follows:
SECTION 1. Political power.All political power is inherent in the people. The enunciation herein of certain rights shall not be construed to deny or impair others retained by the people.
Art. I., § 1, Fla. Const. (emphasis added). The framers thus began the constitution with a declaration that all political power inheres in the people and only they, the people, may decide how and when that power may be given up.[49]
To the extent that the Legislature may enact laws regulating the electoral process, those laws are valid only if they impose no "unreasonable or unnecessary" restraints on the right of suffrage:
The declaration of rights expressly states that "all political power is inherent in the people." Article I, Section 1, Florida Constitution. The right of the people to select their own officers is *1237 their sovereign right, and the rule is against imposing unnecessary and unreasonable [restraints on that right].... Unreasonable or unnecessary restraints on the elective process are prohibited.
Treiman v. Malmquist, 342 So.2d 972, 975 (Fla.1977) (emphasis added).[50] Because election laws are intended to facilitate the right of suffrage, such laws must be liberally construed in favor of the citizens' right to vote:
Generally, the courts, in construing statutes relating to elections, hold that the same should receive a liberal construction in favor of the citizen whose right to vote they tend to restrict and in so doing to prevent disfranchisement of legal voters and the intention of the voters should prevail when counting ballots.... It is the intention of the law to obtain an honest expression of the will or desire of the voter.
State ex rel. Carpenter v. Barber, 144 Fla. 159, 198 So. 49, 51 (1940).[51] Courts must not lose sight of the fundamental purpose of election laws: The laws are intended to facilitate and safeguard the right of each voter to express his or her will in the context of our representative democracy.[52] Technical statutory requirements must not be exalted over the substance of this right.[53]
Based on the foregoing, we conclude that the authority of the Florida Secretary of State to ignore amended returns submitted by a County Canvassing Board may be lawfully exercised only under limited circumstances as we set forth in this opinion. The clear import of the penalty provision of section 102.112 is to deter Boards from engaging in dilatory conduct contrary to statutory authority that results in the late certification of a county's returns. This deterrent purpose is achieved by the fines in section 102.112, which are substantial and personal and are levied on each member of a Board. The alternative penalty, i.e., ignoring the county's returns, punishes not the Board members themselves but rather the county's electors, for it in effect disenfranchises them.[54]
Ignoring the county's returns is a drastic measure and is appropriate only if the returns are submitted to the Department so late that their inclusion will compromise the integrity of the electoral process in either of two ways: (1) by precluding a candidate, elector, or taxpayer from contesting the certification of an election pursuant to section 102.168; or (2) by precluding Florida voters from participating fully in the federal electoral process.[55] In either case, the Secretary must explain to the Board her reason for ignoring the returns and her action must be adequately supported by the law. To disenfranchise electors in an effort to deter Board members, as the Secretary in the present case *1238 proposes, is unreasonable, unnecessary, and violates longstanding law.
Allowing the manual recounts to proceed in an expeditious manner, rather than imposing an arbitrary seven-day deadline, is consistent not only with the statutory scheme but with prior United States Supreme Court pronouncements:
Indiana has found, along with many other States, that one procedure necessary to guard against irregularity and error in the tabulation of votes is the availability of a recount. Despite the fact that a certificate of election may be issued to the leading candidate within 30 days after the election, the results are not final if a candidate's option to compel a recount is exercised. A recount is an integral part of the Indiana electoral process and is within the ambit of the broad powers delegated to the States by Art. I, s 4.
Roudebush v. Hartke, 405 U.S. 15, 25, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972)(footnotes omitted).
In addition, an accurate vote count is one of the essential foundations of our democracy. The words of the Supreme Court of Illinois are particularly apt in this case:
The purpose of our election laws is to obtain a correct expression of the intent of the voters. Our courts have repeatedly held that, where the intention of the voter can be ascertained with reasonable certainty from his ballot, that intention will be given effect even though the ballot is not strictly in conformity with the law.... The legislature authorized the use of electronic tabulating equipment to expedite the tabulating process and to eliminate the possibility of human error in the counting process, not to create a technical obstruction which defeats the rights of qualified voters. This court should not, under the appearance of enforcing the election laws, defeat the very object which those law are intended to achieve. To invalidate a ballot which clearly reflects the voter's intent, simply because a machine cannot read it, would subordinate substance to form and promote the means at the expense of the end.
The voters here did everything which the Election Code requires when they punched the appropriate chad with the stylus. These voters should not be disfranchised where their intent may be ascertained with reasonable certainty, simply because the chad they punched did not completely dislodge from the ballot. Such a failure may be attributable to the fault of the election authorities, for failing to provide properly perforated paper, or it may be the result of the voter's disability or inadvertence. Whatever the reason, where the intention of the voter can be fairly and satisfactorily ascertained, that intention should be given effect.
Pullen v. Mulligan, 138 Ill.2d 21, 149 Ill. Dec. 215, 561 N.E.2d 585, 611 (1990) (citations omitted).

IX. THE PRESENT CASE
The trial court below properly concluded that the County Canvassing Boards are required to submit their returns to the Department by 5:00 p.m. of the seventh day following the election and that the Department is not required to ignore the amended returns but rather may count them. The court, however, erred in holding that the Secretary acted within her discretion in prematurely rejecting any amended returns that would be the result of ongoing manual recounts. The Secretary's rationale for rejecting the Board's returns was as follows:
The Board has not alleged any facts or circumstances that suggest the existence of voter fraud. The Board has not alleged any facts or circumstances that suggest that there has been substantial noncompliance with the state's statutory election procedures, coupled with reasonable doubt as to whether the certified results expressed the will of the voters. The Board has not alleged any facts or circumstances that suggest that Palm *1239 Beach County has been unable to comply with its election duties due to an act of God, or other extenuating circumstances that are beyond its control. The Board has alleged the possibility that the results of the manual recount could affect the outcome of the election if certain results obtain. However, absent an assertion that there has been substantial noncompliance with the law, I do not believe that the possibility of affecting the outcome of the election is enough to justify ignoring the statutory deadline. Furthermore, I find that the facts and circumstances alleged, standing alone, do not rise to the level of extenuating circumstances that justify a decision on my part to ignore the statutory deadline imposed by the Florida Legislature.
Letter from Katherine Harris to Palm Beach Canvassing Board (Nov. 15, 2000)(emphasis added).
We conclude that, consistent with the Florida election scheme, the Secretary may reject a Board's amended returns only if the returns are submitted so late that their inclusion will preclude a candidate from contesting the certification or preclude Florida's voters from participating fully in the federal electoral process. The Secretary in the present case has made no claim that either of these conditions apply at this point in time.
The above analysis is consistent with State ex rel. Chappell v. Martinez, 536 So.2d 1007 (Fla.1988), wherein the Court addressed a comparable recount issue. There, the total votes cast for each of two candidates for a seat in the United States House of Representatives were separated by less than one-half of one percent; the county conducted a mandatory recount; the Board's certification of results was not received by the Department until two days after the deadline, although the Board had telephoned the results to the Department prior to the deadline; and the unsuccessful candidate sued to prevent the Department from counting the late votes. The Court concluded that the will of the electors supersedes any technical statutory requirements:
[T]he electorate's effecting its will through its balloting, not the hypertechnical compliance with statutes, is the object of holding an election. "There is no magic in the statutory requirements. If they are complied with to the extent that the duly responsible election officials can ascertain that the electors whose votes are being canvassed are qualified and registered to vote, and that they do so in a proper manner, then who can be heard to complain the statute has not been literally and absolutely complied with?"
Chappell, 536 So.2d at 1008-09 (quoting Boardman v. Esteva, 323 So.2d 259, 267 (Fla.1975)).

X. CONCLUSION
According to the legislative intent evinced in the Florida Election Code, the permissive language of section 102.112 supersedes the mandatory language of section 102.111. The statutory fines set forth in section 102.112 offer strong incentive to County Canvassing Boards to submit their returns in a timely fashion. However, when a Board certifies its returns after the seven-day period because the Board is acting in conformity with other provisions of the Code or with administrative rules or for other good cause, the Secretary may impose no fines. It is unlikely that the Legislature would have intended to punish a Board for complying with the dictates of the Code or some other law.
Because the right to vote is the preeminent right in the Declaration of Rights of the Florida Constitution, the circumstances under which the Secretary may exercise her authority to ignore a county's returns filed after the initial statutory date are limited. The Secretary may ignore such returns only if their inclusion will compromise the integrity of the electoral process in either of two ways: (1) by precluding a candidate, elector, or taxpayer from contesting the certification of election pursuant to section 102.168; or (2) by precluding Florida voters from participating fully in the federal electoral process. In either such case, this drastic penalty must *1240 be both reasonable and necessary. But to allow the Secretary to summarily disenfranchise innocent electors in an effort to punish dilatory Board members, as she proposes in the present case, misses the constitutional mark. The constitution eschews punishment by proxy.
As explained above, the Florida Election Code must be construed as a whole. Section 102.166 governs manual recounts and appears to conflict with sections 102.111 and 102.112, which set a seven day deadline by which County Boards must submit their returns. Further, section 102.111, which provides that the Secretary "shall" ignore late returns, conflicts with section 102.112, which provides that the Secretary "may" ignore late returns. In the present case, we have used traditional rules of statutory construction to resolve these ambiguities to the extent necessary to address the issues presented here. We decline to rule more expansively, for to do so would result in this Court substantially rewriting the Code. We leave that matter to the sound discretion of the body best equipped to address itthe Legislature.
Because of the unique circumstances and extraordinary importance of the present case, wherein the Florida Attorney General and the Florida Secretary of State have issued conflicting advisory opinions concerning the propriety of conducting manual recounts, and because of our reluctance to rewrite the Florida Election Code, we conclude that we must invoke the equitable powers of this Court to fashion a remedy that will allow a fair and expeditious resolution of the questions presented here.[56]
Accordingly, in order to allow maximum time for contests pursuant to section 102.168, amended certifications must be filed with the Elections Canvassing Commission by 5 p.m. on Sunday, November 26, 2000 and the Secretary of State and the Elections Canvassing Commission shall accept any such amended certifications received by 5 p.m. on Sunday, November 26, 2000, provided that the office of the Secretary of State, Division of Elections is open in order to allow receipt thereof. If the office is not open for this special purpose on Sunday, November 26, 2000, then any amended certifications shall be accepted until 9 a.m. on Monday, November 27, 2000. The stay order entered on November 17, 2000, by this Court shall remain in effect until the expiration of the time for accepting amended certifications set forth in this opinion. The certificates made and signed by the Elections Canvassing Commission pursuant to section 102.121 shall include the amended returns accepted through the dates set forth in this opinion.
It is so ordered. No motion for rehearing will be allowed.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] The Palm Beach County Canvassing Board has filed in this Court an "Emergency Petition for Extraordinary Writ" against Secretary of State Katherine Harris and others (Case Number SC00-2346). We have examined our jurisdiction under article V, section 3(b)(8) of the Florida Constitution. However, because the issue raised by that separate petition can be disposed of in our pending case and because we have previously stated in our order of November 16, 2000, that there was "no legal impediment" to the manual recounts continuing, we deem it unnecessary to determine if we have a separate basis of jurisdiction for entertaining the writ. Accordingly, by separate order we dismiss the petition.
[2] Section 102.141(4), Florida Statutes (2000), provides in pertinent part:

(4) If the returns for any office reflect that a candidate was defeated or eliminated by one-half of a percent or less of the votes cast for such office ... the board responsible for certifying the results of the vote on such race or measure shall order a recount of the votes cast with respect to such office or measure.
[3] We have not discussed the events in Miami-Dade County because Miami-Dade is not a party nor has it sought to intervene in this case.
[4] The trial court's order reads in part:

The County Canvassing Boards are, indeed, mandated to certify and file their returns with the Secretary of State by 5:00 p.m. today, November 14, 2000. There is nothing, however, to prevent the County Canvassing Boards from filing with the Secretary of State further returns after completing a manual recount. It is then up to the Secretary of state, as the Chief Election Officer, to determine whether any such corrective or supplemental returns filed after 5:00 p.m. today, are to be ignored. Just as the County Canvassing Boards have the authority to exercise discretion in determining whether a manual recount should be done, the Secretary of State has the authority to exercise her discretion in reviewing that decision, considering all attendant facts and circumstances, and decide whether to include or to ignore the late filed returns in certifying the election results and declaring the winner.
Just as the Secretary cannot decide ahead of time what late returns should or should not be ignored, it would not be proper for me to do so by injunction. I can lawfully direct the Secretary to properly exercise her discretion in making a decision on the returns, but I cannot enjoin the Secretary to make a particular decision, nor can I rewrite the Statute which, by its plain meaning, mandates the filing of returns by the Canvassing Boards by 5:00 p.m. on November 14, 2000.
McDermott v. Harris, No. 00-2700, unpublished order at 7 (Fla.2d Cir.Ct. Nov. 14, 2000).
[5] The criteria considered by the Secretary are as follows:

Facts & Circumstances Warranting Waiver of Statutory Deadline
1. Where there is proof of voter fraud that affects the outcome of the election. In re Protest of Election Returns, 707 So.2d 1170, 1172 (Fla. 3d DCA 1998); Broward County Canvassing Bd. v. Hogan, 607 So.2d 508, 509 (Fla. 4th DCA 1992).
2. Where there has been a substantial noncompliance with statutory election procedures, and reasonable doubt exists as to whether the certified results expressed the will of the voters. Beckstrom v. Volusia County Canvassing Bd., 707 So.2d 720 (Fla. 1998).
3. Where election officials have made a good faith effort to comply with the statutory deadline and are prevented from timely complying with their duties as a result of an act of God, or extenuating circumstances beyond their control, by way of example, an electrical power outage, a malfunction of the transmitting equipment, or a mechanical malfunction of the voting tabulation system. McDermott v. Harris, No. 00-2700, 2000 WL 1693713 (Fla.2d Cir.Ct. Nov. 14, 2000).
Facts & Circumstances Not Warranting Waiver of Statutory Deadline
1. Where there has been substantial compliance with statutory election procedures and the contested results relate to voter error, and there exists a reasonable expectation that the certified results expressed the will of the voters. Beckstrom. Volusia County Canvassing Bd., 707 So.2d 720 (Fla.1998).
2. Where there exists a ballot that may be confusing because of the alignment and location of the candidates' names, but is otherwise in substantial compliance with the election laws. Nelson v. Robinson, 301 So.2d 508, 511 (Fla. 2d DCA 1974) ("[M]ere confusion does not amount to an impediment to the voters' free choice if reasonable time and study will sort it out.").
3. Where there is nothing "more than a mere possibility that the outcome of the election would have been effected." Broward County Canvassing Bd. v. Hogan, 607 So.2d 508, 510 (Fla. 4th DCA 1992).
Letter from Katherine Harris to Palm Beach County Canvassing Board (Nov. 15, 2000).
[6] The court's order reads in part:

On the limited evidence presented, it appears that the Secretary has exercised her reasoned judgment to determine what relevant factors and criteria should be considered, applied them to the facts and circumstances pertinent to the individual counties involved, and made her decision. My order requires nothing more.
McDermott v. Harris, No. 00-2700, 2000 WL 1714590, unpublished order at 2 (Fla.2d Cir. Ct. Nov. 17, 2000).
[7] See Art. V, § 3(b)(5), Fla. Const. ("[The Court may] review any order or judgment of a trial court certified by the district court of appeal in which an appeal is pending to be of great public importance ... and certified to require immediate resolution by the supreme court.").
[8] Subsequently, the Volusia Board moved to voluntarily dismiss its appeal in this Court. The Court granted the motion, but indicated that the case style would remain the same and that Gore and the Palm Beach Board "would continue as intervenors/appellants in this action."
[9] See State ex rel.Chappell v. Martinez, 536 So.2d 1007, 1009 (Fla.1988) (holding that disenfranchisement of voters is not proper where there has been substantial compliance with the election statute and the intent of voter can be ascertained); Beckstrom v. Volusia County Canvassing Bd., 707 So.2d 720, 726 (Fla. 1998) (holding that courts should not frustrate will of voters if that will can be determined).
[10] Neither party has raised as an issue on appeal the constitutionality of Florida's election laws.
[11] See Donato v. American Tel. & Tel.Co., 767 So.2d 1146, 1153 (Fla.2000); Smith v. Crawford, 645 So.2d 513, 521 (Fla. 1st DCA 1994).
[12] See Donato, 767 So.2d at 1153; Nikolits v. Nicosia, 682 So.2d 663, 666 (Fla. 4th DCA 1996).
[13] § 102.166(4)(b), Fla. Stat. (2000).
[14] § 102.166(4)(c), Fla. Stat. (2000).
[15] See Broward County Canvassing Bd. v. Hogan, 607 So.2d 508, 510 (Fla. 4th DCA 1992).
[16] See § 102.166(4)(d), Fla. Stat. (2000).
[17] The Commission is composed of the Secretary of State, the Director of the Division of Elections, and the Governor. See § 102.111, Fla. Stat. In this instance, Florida Governor Jeb Bush has removed himself from the Commission because his brother, Texas Governor George W. Bush, is the Republican candidate for President of the United States. Robert Crawford, Florida Commissioner or Agriculture, has been appointed to replace Florida Governor Jeb Bush. See § 102.111, Fla. Stat.
[18] § 97.012, Fla. Stat. (2000).
[19] § 98.015, Fla. Stat. (2000).
[20] § 102.012(1), Fla. Stat. (2000).
[21] § 102.012(1), Fla. Stat. (2000).
[22] § 102.012(2), Fla. Stat. (2000).
[23] § 102.012(4), Fla. Stat. (2000).
[24] § 102.071, Fla. Stat. (2000).
[25] § 102.141(3), Fla. Stat. (2000).
[26] § 102.141(1), Fla. Stat. (2000).
[27] § 102.141(2), Fla. Stat. (2000).
[28] § 102.141(3), Fla. Stat. (2000).
[29] §§ 102.111-.112, Fla.Stat. (2000).
[30] §§ 102.111, .121, Fla. Stat. (2000).
[31] § 102.131, Fla. Stat. (2000) ("If any returns shall appear to be irregular or false so that the Elections Canvassing Commission is unable to determine the true vote for any office ... the commission shall so certify and shall not include the returns in its determination, canvass, and declaration.").
[32] § 102.131, Fla. Stat. (2000) ("The Elections Canvassing Commission in determining the true vote shall not have authority to look beyond the county returns.").
[33] § 102.166, Fla. Stat. (2000).
[34] See § 102.168(2), Fla. Stat. (2000) (explaining that the action must be filed within ten days after the last Board certifies its returns or within five days after the last Board certifies its returns following a protest).
[35] The grounds for contesting an election are set forth in section 102.168(3), Florida Statutes (2000):

(a) Misconduct, fraud, or corruption ... sufficient to change or place in doubt the result of the election.
(b) Ineligibility of the successful candidate....
(c) Receipt of a number of illegal votes or rejection of a number of legal votes sufficient to change or place in doubt the result of the election.
(d) Proof that any elector, election official or canvassing board member was given or offered a bribe....
(e) Any other cause or allegation which, if sustained, would show that a person other than the successful candidate was the person duly nominated or elected to the office in question.
[36] As discussed in Siegel v. LePore, 2000 WL 1687185 *6 (S.D.Fla.2000):

On its face, the manual recount provision does not limit candidates access to the ballot or interfere with voters' right to associate or vote. Instead the manual recount provision is intended to safeguard the integrity and reliability of the electoral process by providing a structural means of detecting and correcting clerical or electronic tabulating errors in the counting of election ballots. While discretionary in its application, the provision is not wholly standardless. Rather, the central purpose of the scheme, as evidenced by its plain language, is to remedy `an error in the vote tabulation which could affect the outcome of the election.' Fla. Stat. § 102.166(5). In this pursuit, the provision strives to strengthen rather than dilute the right to vote by securing, as nearly as humanly possible, an accurate and true reflection of the will of the electorate. Notably, the four county canvassing boards [that were] challenged in this suit have reported various anomalies in the initial automated count and recount. The state manual recount provision therefore serves important governmental interests.
[37] The statute does not set forth any criteria for determining when a manual recount is appropriate. See § 102.166(4)(c), Fla. Stat. (2000) ("The county canvassing board may authorize a manual recount.").
[38] § 102.166(4)(d), Fla. Stat. (2000).
[39] See, e.g., Florida Birth-Related Neurological Injury Compensation Ass'n v. Florida Div. of Admin. Hearings, 686 So.2d 1349 (Fla. 1997).
[40] See, e.g., Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (Fla.1995).
[41] See, e.g., Capers v. State, 678 So.2d 330 (Fla.1996).
[42] See, e.g., State ex rel. Johnson v. Vizzini, 227 So.2d 205 (Fla.1969).
[43] See, e.g., McKendry v. State, 641 So.2d 45 (Fla.1994).
[44] See, e.g., Amente v. Newman, 653 So.2d 1030 (Fla.1995).
[45] See, e.g., Sun Ins. Office, Ltd. v. Clay, 133 So.2d 735 (Fla.1961).
[46] According to the Secretary, this matter is governed by consent decree with the federal government.
[47] See Fla. Admin. Code R.1S-2.013 (1998), which provides in relevant part:

(7) With respect to the presidential preference primary and the general election, any absentee ballot cast for a federal office by an overseas elector which is postmarked or signed and dated no later than the date of the Federal election shall be counted if received no later than 10 days from the date of the Federal election so long as such absentee ballot is otherwise proper. Overseas electors shall be informed by the supervisors of elections of the provisions of this rule, i.e., the ten day extension provision for the presidential preference primary and the general election, and the provision for voting for the second primary.
[48] Traylor v. State, 596 So.2d 957, 963 (Fla. 1992).
[49] See Talbot D'Alemberte, Commentary, 25A Fla. Stat. Ann., Art. I, § 1, Fla. Const. (West 1991).
[50] See also Pasco v. Heggen, 314 So.2d 1, 3 (Fla.1975) ("We have also stated that only unreasonable or unnecessary restraints on the elective process are prohibited.").
[51] See also State ex rel. Whitley v. Rinehart, 140 Fla. 645, 192 So. 819, 823 (1939) ("Election laws should be construed liberally in favor of the right to vote....").
[52] See, e.g., State ex rel.Landis v. Dyer, 109 Fla. 33, 148 So. 201, 203 (1933) ("The right to vote, though not inherent, is a constitutional right in this state. The Legislature may impose reasonable rules and regulations for its governance, but it cannot under the guise of such regulation unduly subvest or restrain this right.").
[53] See, e.g., Boardman v. Esteva, 323 So.2d 259, 269 (Fla.1975) ("In summary, we hold that the primary consideration in an election contest is whether the will of the people has been effected.").
[54] Cf. Boardman v. Esteva, 323 So.2d 259, 268-69 (Fla.1975) ("When the voters have done all that the statute has required them to do, they will not be disfranchised solely on the basis of the failure of the election officials to observe directory statutory instructions.").
[55] See 3 U.S.C. §§ 1-10 (1994).
[56] At oral argument, we inquired as to whether the presidential candidates were interested in our consideration of a reopening of the opportunity to request recounts in any additional counties. Neither candidate requested such an opportunity.