[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

--------------------------------------------
No. 00-16423
--------------------------------------------
D.C. Docket No. 00-00453-4:CV-MP

ROBERT N. HARRIS,
JILL KATZ, ET AL.,

Plaintiffs-Appellants,

versus

FLORIDA ELECTIONS COMMISSION,
FLORIDA ELECTIONS CANVASSING COMMISSION,
ET AL.,

Defendants-Appellees.

--------------------------------------------
No. 00-16424
--------------------------------------------
D.C. Docket No. 00-00459-4:CV-MP

STEVEN MEDINA,
DANIEL H. DONALDSON, ET AL.,

Plaintiffs-Appellants,

versus

FLORIDA ELECTIONS CANVASSING COMMISSION,
KATHERINE HARRIS, SECRETARY OF STATE OF FLORIDA,
ET AL.,

Defendants-Appellees.

----------------------------------------------------------------
Appeals from the United States District Court
for the Northern District of Florida
----------------------------------------------------------------
(December 11, 2000)

Before EDMONDSON, BLACK and CARNES, Circuit Judges.

PER CURIAM:

This appeal[1] is about counting overseas absentee ballots in a presidential election and an attack on paragraph 7 of Rule 1S-2.013 of the Florida Administrative Code. Plaintiff-Appellants want us to nullify paragraph 7. The pertinent part of the Rule reads this way:

> With respect to the presidential preference primary and the general election, any absentee ballot cast for a federal office by an overseas elector which is postmarked or signed and dated no later than the date of the Federal election shall be counted if received no later than 10 days from the date of the Federal election as long as such absentee ballot is otherwise proper. Overseas electors shall be informed by the supervisors of elections of the provisions of this rule, i.e., the ten day extension provision for the

---

[1] This appeal arises from two separate cases which have been consolidated; but we refer to them as one for our purposes.

2

presidential preference primary and the general election, and the provision for voting for the second primary.

This rule has been in place and followed for roughly sixteen years.

The Rule is, in effect, a federal court order dealing with how presidential elections in Florida must accommodate Florida residents, including members of the armed forces of the United States, who are outside of the country on election day.[2] The cases underlying this appeal were first brought in state courts. Defendants removed the cases to federal court. The federal courts had jurisdiction, because, among other things, the state defendants were being sued to stop them from complying with the Rule, which (given the circumstances of its creation) was, in effect, the order of a federal court.[3]

---

[2] See Fla. Admin. Code 1S-2.013. For a brief history of the federal court litigation (which was itself based on the laws of the United States) leading to the development of the administrative rule in question, see the district court's opinion in this case. See Harris et al. v. Florida Election Canvassing Commission, No. 4:00cv453 (N.D. Fla. Dec. 9, 2000). We can take judicial notice of the records of proceedings in this circuit's district courts. See United States v. Glover, 179 F.3d 1300, 1303 n.5 (11th Cir. 1999). We see that before the Rule was implemented by Florida, the text of the rule was presented to a United States District Judge -- Judge Stafford -- as part of the state remedial plan to comply with the consent decree entered between Florida and the federal government in 1982. After Judge Stafford looked at the proposed rule, Judge Stafford's order approved of the plan, ordered the Rule implemented and directed Florida to provide him notice when the Rule was promulgated.

[3] Incidentally, Plaintiffs themselves indicate to us that federal questions may play a necessary role in resolving their purported state cause of action. First, in the Harris case, Plaintiffs demanded that the court order Florida's Governor to "transmit to the President of the U.S. Senate a corrected certificate of ascertainment as to the electors selected by the state of Florida in the Presidential and Vice-Presidential election on November 7, 2000." The Governor's duty to transmit the certificate of ascertainment is a duty based on federal law governed by 3 U.S.C. §6. For a court to order the Governor to act under 3 U.S.C. §6 would seem

3

Turning to the merits, we see no reversible error in the district court's judgment. We note in passing that the district court's views are consistent with recent comments of Florida's highest court about the working of the absentee ballot law.[4] We also observe that to read Florida's law as Plaintiffs ask us to do

to require the court to decide the scope of the Governor's duty under the federal statute: a question of federal law. By the way, we do not decide that a federal court has even arguable authority to grant relief by ordering a state's governor to act as Plaintiffs have requested.

Second, Plaintiffs, in their main brief to us, characterize their claims, in both cases, as presenting issues of federal law: they say "Plaintiffs alleged that in violation of Article II of the United States Constitution, 3 U.S.C. §1, and Florida law, 2,490 ballots received after election day were counted and included in the final certification by the Defendant Florida Elections Canvassing Commission, which includes defendants Harris and Roberts as officials in the Secretary of State's office." (emphasis added). Plaintiffs filed a consolidated brief, that is, one brief for the two underlying cases. Although we do not treat this sentence as a decisive admission by itself, that Plaintiffs themselves recognize that their allegations were claims of rights under federal law, strengthens our conclusion that issues of federal law are a necessary part of Plaintiffs' claim. See Franchise Tax Bd. v. Const. Laborers Vac. Trust, 103 S.Ct. 2841, 2846 (1983) (allowing removal "where the vindication of a right under state law necessarily turned on some construction of federal law.").

And we do not rule out other bases that federal jurisdiction might exist. See generally, Striff v. Mason, 849 F.2d 240, 245 (1988) (finding that claims "had a sufficient federal character to support removal" because of related federal consent decree); United States v. City of New York, 972 F.2d 464, 469 (1992) and Xiong v. State of Minnesota, et al., 195 F.3d 424, 426 (1999) (both finding removal authority under 28 U.S.C. §1651, the All Writs Act).

[4]In Palm Beach County Canvassing Board v. Harris, Nos. SC00-2346, SC00-2348 and SC00-2349 slip op. at 30 (Fla. Nov. 21 2000), the Florida Supreme Court wrote these words: "Our state statutory scheme has been superseded by federal law governing overseas voters; overseas ballots must be counted if received no later than ten days following the election (i.e. the ballots do not have to be received by 7:00 p.m. of the day of the election as provided by state law)." These words might have been dicta. And, the opinion in which they appeared led to a judgment that has been vacated. Still we conclude that, because they are the words of Florida's highest court, what the state supreme court wrote is important and persuasive on how the absentee ballot law has worked (and is supposed to work) in Florida.

4

would be a significant change in the actual election practices of Florida.[5] While Florida law seems to favor counting ballots, this change would take away the votes of thousands of Florida citizens --including members of America's armed forces on duty outside of the country pursuant to the nation's orders -- who, to cast their ballots, just did what they were told by Florida's election officials.[6] In addition, we have seen nothing and been cited to nothing indicating that Florida's legislature – during the sixteen years of the Rule's existence – has ever expressed an intent to overrule the Rule legislatively.

AFFIRMED.

---

[5]Apart from questions of simple fairness, such a change might raise legal concerns. See 41 U.S.C. § 1973c.

[6]The Florida election officials were themselves doing, in effect, what they were told to do by the federal court.

The Florida Supreme Court has said that where absentee voters have done as they were instructed to do by election officials, their ballots should be counted even where the instructions were based upon a misunderstanding of state law. See Beckstrom v. Volusia County Canvassing Bd., 707 So.2d 720, 724-25 (Fla. 1998).

Plaintiffs claim that what overseas voters were told is not clear. The pertinent administrative rule, however, requires that county election officials notify overseas voters of the ten-day- extension period; and record evidence exists that this requirement has been followed.