BUSH *v.* PALM BEACH COUNTY CANVASSING
BOARD ET AL.

No. 00–836.   Argued December 1, 2000—Decided December 4, 2000

*Theodore B. Olson* argued the cause for petitioner. With him on the briefs were *Terence P. Ross, Douglas R. Cox, Thomas G. Hungar, Mark A. Perry, Benjamin L. Ginsberg, Michael A. Carvin, Barry Richard, John F. Manning, William K. Kelley, Bradford R. Clark, George J. Terwilliger III, Timothy E. Flanigan,* and *Marcos D. Jiménez. Joseph P. Klock, Jr.,* argued the cause for Katherine Harris et al., respondents under this Court's Rule 12.6, in support of peti-

tioner. With him on the briefs were *John W. Little III, Ricardo M. Martinez-Cid,* and *Bill L. Bryant, Jr.*

*Paul F. Hancock,* Deputy Attorney General of Florida, argued the cause for respondent Butterworth, Attorney General of Florida. With him on the brief were *Mr. Butterworth, pro se,* and *Jason Vail* and *Kimberly J. Tucker,* Assistant Attorneys General. *Laurence H. Tribe* argued the cause for respondents Gore et al. With him on the briefs were *David Boies, Kathleen M. Sullivan, Thomas C. Goldstein, Teresa Wynn Roseborough, James A. Orr, Andrew J. Pincus, Kendall Coffey, Jonathan S. Massey,* and *Peter J. Rubin. Samuel S. Goren, Edward A. Dion,* and *Tamara M. Scrudders* filed a brief for respondents Broward County Canvassing Board et al. *Bruce S. Rogow, Beverly A. Pohl,* and *Denise D. Dytrych* filed a brief for respondent Palm Beach County Canvassing Board.*

---

*Briefs of *amici curiae* urging reversal were filed for the State of Alabama et al. by *Bill Pryor,* Attorney General of Alabama, and *Margaret L. Fleming, John J. Park, Jr., Charles B. Campbell, Scott L. Rouse, A. Vernon Barnett IV,* and *Richard E. Trewhella, Jr.,* Assistant Attorneys General; for the Commonwealth of Virginia et al. by *Mark L. Earley,* Attorney General of Virginia, *Randolph A. Beales,* Chief Deputy Attorney General, *William Henry Hurd,* Solicitor General, *Judith Williams Jagdmann,* Deputy Attorney General, *Siran S. Faulders* and *Maureen Riley Matsen,* Senior Assistant Attorneys General, *Eleanor Anne Chesney, Anthony P. Meredith,* and *Valerie L. Myers,* Assistant Attorneys General, *Charlie Condon,* Attorney General of South Carolina, and *Don Stenberg,* Attorney General of Nebraska; and for William H. Haynes et al. by *Jay Alan Sekulow, Thomas P. Monaghan, Stuart J. Roth, Colby M. May, James M. Henderson, Sr., David A. Cortman, Griffin B. Bell, Paul D. Clement,* and *Jeffrey S. Bucholtz.*

*Steven R. Shapiro, Laughlin McDonald,* and *James K. Green* filed a brief for the American Civil Liberties Union as *amicus curiae* urging affirmance.

Briefs of *amici curiae* were filed for the Florida Senate et al. by *Charles Fried, Einer Elhauge,* and *Roger J. Magnuson;* for the State of Iowa et al. by *Thomas J. Miller,* Attorney General of Iowa, *Dennis W. Johnson,* Solicitor General, and *Tam B. Ormiston,* Deputy Attorney General, and by the Attorneys General for their respective States as follows: *Bill Lockyer* of

PER CURIAM.

The Supreme Court of the State of Florida interpreted its elections statutes in proceedings brought to require manual recounts of ballots, and the certification of the recount results, for votes cast in the quadrennial Presidential election held on November 7, 2000. Governor George W. Bush, Republican candidate for the Presidency, filed a petition for certiorari to review the Florida Supreme Court decision. We granted certiorari on two of the questions presented by petitioner: whether the decision of the Florida Supreme Court, by effectively changing the State's elector appointment procedures after election day, violated the Due Process Clause or 3 U. S. C. § 5, and whether the decision of that court changed the manner in which the State's electors are to be selected, in violation of the legislature's power to designate the manner for selection under Art. II, § 1, cl. 2, of the United States Constitution. *Post*, p. 1004.

On November 8, 2000, the day following the Presidential election, the Florida Division of Elections reported that Governor Bush had received 2,909,135 votes, and respondent Democrat Vice President Albert Gore, Jr., had received 2,907,351, a margin of 1,784 in Governor Bush's favor. Under Fla. Stat. § 102.141(4) (2000), because the margin of victory was equal to or less than one-half of one percent of the votes cast, an automatic machine recount occurred. The recount resulted in a much smaller margin of victory for Governor Bush. Vice President Gore then exercised his

California, *Richard Blumenthal* of Connecticut, *Earl I. Anzai* of Hawaii, *Karen M. Freeman-Wilson* of Indiana, *Andrew Ketterer* of Maine, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Joseph P. Mazurek* of Montana, *Frankie Sue Del Papa* of Nevada, *Patricia A. Madrid* of New Mexico, *Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, and *Sheldon Whitehouse* of Rhode Island; for the American Civil Rights Union by *John C. Armor* and *Peter Ferrara;* for the Coalition for Local Sovereignty by *Kenneth B. Clark;* and for the Disenfranchised Voters in the USA et al. by *Ilise Levy Feitshans.*

statutory right to submit written requests for manual recounts to the canvassing board of any county. See § 102.166. He requested recounts in four counties: Volusia, Palm Beach, Broward, and Miami-Dade.

The parties urged conflicting interpretations of the Florida Election Code respecting the authority of the canvassing boards, the Secretary of State (hereinafter Secretary), and the Elections Canvassing Commission. On November 14, in an action brought by Volusia County, and joined by the Palm Beach County Canvassing Board, Vice President Gore, and the Florida Democratic Party, the Florida Circuit Court ruled that the statutory 7-day deadline was mandatory, but that the Volusia board could amend its returns at a later date. The court further ruled that the Secretary, after "considering all attendant facts and circumstances," App. to Pet. for Cert. 49a, could exercise her discretion in deciding whether to include the late amended returns in the statewide certification.

The Secretary responded by issuing a set of criteria by which she would decide whether to allow a late filing. The Secretary ordered that, by 2 p.m. the following day, November 15, any county desiring to forward late returns submit a written statement of the facts and circumstances justifying a later filing. Four counties submitted statements, and, after reviewing the submissions, the Secretary determined that none justified an extension of the filing deadline. On November 16, the Florida Democratic Party and Vice President Gore filed an emergency motion in the state court, arguing that the Secretary had acted arbitrarily and in contempt of the court's earlier ruling. The following day, the court denied the motion, ruling that the Secretary had not acted arbitrarily and had exercised her discretion in a reasonable manner consistent with the court's earlier ruling. The Democratic Party and Vice President Gore appealed to the First District Court of Appeal, which certified the matter to the Florida Supreme Court. That court accepted

jurisdiction and *sua sponte* entered an order enjoining the Secretary and the Elections Canvassing Commission from finally certifying the results of the election and declaring a winner until further order of that court.

The Supreme Court, with the expedition requisite for the controversy, issued its decision on November 21. *Palm Beach County Canvassing Bd.* v. *Harris,* 772 So. 2d 1220 (2000). As the court saw the matter, there were two principal questions: whether a discrepancy between an original machine return and a sample manual recount resulting from the way a ballot has been marked or punched is an "error in vote tabulation" justifying a full manual recount; and how to reconcile what it spoke of as two conflicts in Florida's election laws: (a) between the timeframe for conducting a manual recount under Fla. Stat. § 102.166 (2000) and the timeframe for submitting county returns under §§ 102.111 and 102.112, and (b) between § 102.111, which provides that the Secretary "shall . . . ignor[e]" late election returns, and § 102.112, which provides that she "may . . . ignor[e]" such returns.

With regard to the first issue, the court held that, under the plain text of the statute, a discrepancy between a sample manual recount and machine returns due to the way in which a ballot was punched or marked did constitute an "error in vote tabulation" sufficient to trigger the statutory provisions for a full manual recount.

With regard to the second issue, the court held that the "shall . . . ignor[e]" provision of § 102.111 conflicts with the "may . . . ignor[e]" provision of § 102.112, and that the "may . . . ignor[e]" provision controlled. The court turned to the questions whether and when the Secretary may ignore late manual recounts. The court relied in part upon the right to vote set forth in the Declaration of Rights of the Florida Constitution in concluding that late manual recounts could be rejected only under limited circumstances. The court then stated: "[B]ecause of our reluctance to rewrite the Florida

Election Code, we conclude that we must invoke the equitable powers of this Court to fashion a remedy . . . ." 772 So. 2d, at 1240. The court thus imposed a deadline of November 26, at 5 p.m., for a return of ballot counts. The 7-day deadline of § 102.111, assuming it would have applied, was effectively extended by 12 days. The court further directed the Secretary to accept manual counts submitted prior to that deadline.

As a general rule, this Court defers to a state court's interpretation of a state statute. But in the case of a law enacted by a state legislature applicable not only to elections to state offices, but also to the selection of Presidential electors, the legislature is not acting solely under the authority given it by the people of the State, but by virtue of a direct grant of authority made under Art. II, § 1, cl. 2, of the United States Constitution. That provision reads:

> "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress . . . ."

Although we did not address the same question petitioner raises here, in *McPherson* v. *Blacker*, 146 U. S. 1, 25 (1892), we said:

> "[Art. II, § 1, cl. 2,] does not read that the people or the citizens shall appoint, but that 'each State shall'; and if the words 'in such manner as the legislature thereof may direct,' had been omitted, it would seem that the legislative power of appointment could not have been successfully questioned in the absence of any provision in the state constitution in that regard. Hence the insertion of those words, while operating as a limitation upon the State in respect of any attempt to circumscribe the legislative power, cannot be held to operate as a limitation on that power itself."

There are expressions in the opinion of the Supreme Court of Florida that may be read to indicate that it construed the Florida Election Code without regard to the extent to which the Florida Constitution could, consistent with Art. II, § 1, cl. 2, "circumscribe the legislative power." The opinion states, for example, that "[t]o the extent that the Legislature may enact laws regulating the electoral process, those laws are valid only if they impose no 'unreasonable or unnecessary' restraints on the right of suffrage" guaranteed by the State Constitution. 772 So. 2d, at 1236. The opinion also states that "[b]ecause election laws are intended to facilitate the right of suffrage, such laws must be liberally construed in favor of the citizens' right to vote . . . ." *Id.*, at 1237.

In addition, 3 U. S. C. § 5 provides in pertinent part:

> "If any State shall have provided, by laws enacted prior to the day fixed for the appointment of the electors, for its final determination of any controversy or contest concerning the appointment of all or any of the electors of such State, by judicial or other methods or procedures, and such determination shall have been made at least six days before the time fixed for the meeting of the electors, such determination made pursuant to such law so existing on said day, and made at least six days prior to said time of meeting of the electors, shall be conclusive, and shall govern in the counting of the electoral votes as provided in the Constitution, and as hereinafter regulated, so far as the ascertainment of the electors appointed by such State is concerned."

The parties before us agree that whatever else may be the effect of this section, it creates a "safe harbor" for a State insofar as congressional consideration of its electoral votes is concerned. If the state legislature has provided for final determination of contests or controversies by a law made prior to election day, that determination shall be conclusive if made at least six days prior to said time of meeting

of the electors. The Florida Supreme Court cited 3 U. S. C. §§ 1–10 in a footnote of its opinion, 772 So. 2d, at 1238, n. 55, but did not discuss § 5. Since § 5 contains a principle of federal law that would assure finality of the State's determination if made pursuant to a state law in effect before the election, a legislative wish to take advantage of the "safe harbor" would counsel against any construction of the Election Code that Congress might deem to be a change in the law.

After reviewing the opinion of the Florida Supreme Court, we find "that there is considerable uncertainty as to the precise grounds for the decision." *Minnesota* v. *National Tea Co.,* 309 U. S. 551, 555 (1940). This is sufficient reason for us to decline at this time to review the federal questions asserted to be present. See *ibid.*

> "It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions. But it is equally important that ambiguous or obscure adjudications by state courts do not stand as barriers to a determination by this Court of the validity under the federal constitution of state action. Intelligent exercise of our appellate powers compels us to ask for the elimination of the obscurities and ambiguities from the opinions in such cases." *Id.,* at 557.

Specifically, we are unclear as to the extent to which the Florida Supreme Court saw the Florida Constitution as circumscribing the legislature's authority under Art. II, § 1, cl. 2. We are also unclear as to the consideration the Florida Supreme Court accorded to 3 U. S. C. § 5. The judgment of the Supreme Court of Florida is therefore vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*