Edward W. JEFFERSON, et al., Relators,

v.

COMMISSIONER OF REVENUE, Respondent.

No. C6–01–308.

Supreme Court of Minnesota.

Aug. 2, 2001.

Lawrence H. Crosby, Jay Dennis Olson, Crosby & Associates, St. Paul, for Relators.

Mike Hatch, Attorney General, Cecelia K. Morrow, Assistant Attorney General, St. Paul, for Respondent.

## OPINION

PAGE, Justice.

The issue presented by this case is whether the State of Minnesota may impose its income tax on enrolled members of an Indian tribe who reside off the reservation or, more precisely, outside Indian

country,[1] but within the State of Minnesota, for income derived from reservation gaming operations authorized by the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721 (1994 & Supp. V 1999) (IGRA). On August 26, 1999, and March 3, 2000, the Minnesota Commissioner of Revenue assessed income taxes, penalties, and interest against relators Edward and Tina Jefferson and each of their three minor children (collectively the Jeffersons) for the tax years 1991 through 1998.[2] Specifically, the Commissioner sought to tax payments the Jeffersons received from the Prairie Island Indian Community's gaming operations. It is undisputed that, at all relevant times, the Jeffersons were enrolled members of the Prairie Island Indian Community who resided off the Prairie Island Indian Reservation but within the State of Minnesota.

The Jeffersons appealed each of these assessments to the Minnesota Tax Court, arguing that: (1) the IGRA preempts the state from imposing its income tax on the per capita payments made to them by the Prairie Island Indian Community, (2) the state violated the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Minnesota Constitution by imposing its income tax on nonreservation Indians but not on reservation Indians, and (3) the state's imposition of its income tax on them infringes on tribal self-governance. Relying primarily on *Brun v. Commissioner of Revenue*, 549 N.W.2d 91 (Minn.1996), the tax court, in granting the Commissioner's summary judgment motion, rejected the preemption and Equal Protection Clause/Uniformity Clause arguments, did not address the infringement argument, and affirmed the Commissioner's assessments.[3] *Jefferson v. Comm'r of Revenue*, Nos. 7190, 7243, 7191, 7192, 2001 WL 46248, at *2–3 (Minn. T.C. Jan. 17, 2001). In their appeal to this court, the Jeffersons make the same arguments they made below to the tax court. We affirm.

■ Our review of tax court decisions is limited to determining whether the tax court lacked jurisdiction, whether the tax court's decision is supported by the evidence and is in conformity with the law, and whether the tax court committed any other error of law. *Skyline Pres. Found. v. County of Polk*, 621 N.W.2d 727, 731 (Minn.2001); *see* Minn.Stat. § 271.10, subd. 1 (2000). This court reviews an or-

1. The inquiry is not simply whether the taxpayers resided on a reservation, but whether they resided within "Indian country." *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 453, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995). " 'Indian country,' as Congress comprehends that term, includes 'formal and informal reservations, dependent Indian communities, and Indian allotments, whether restricted or held in trust by the United States.' " *Id.* at 453 n. 2, 115 S.Ct. 2214 (citations omitted). The Jeffersons do not contest the Commissioner's assertion that "[t]his case does not involve any distinction between" the terms "Indian lands," "Indian country," or "the reservation." Although the Jeffersons discuss "Indian country" in their brief, they do not claim that any of their residences during the relevant tax years were within "Indian country."

2. The assessments against Edward and Tina Jefferson were for tax years 1992 and 1994 through 1998. The assessments against two of the Jefferson children were for tax years 1991 through 1994, while the assessments against the third child were for tax years 1992 through 1994. Because the trustee for the Jefferson children's tribal trust fund has already paid their tax liabilities to the Department of Revenue, their claims are for a refund of those payments.

3. Although the tax court's order did not expressly affirm the assessments of taxes, penalties, and interest against each of the Jefferson children, that holding is implicit in the order.

der granting summary judgment to determine whether there are any genuine issues of material fact and whether the lower court erred in applying the law. *Burlington N.R.R. v. Comm'r of Revenue*, 606 N.W.2d 54, 57 (Minn.2000). We view "the evidence in the light most favorable to the party against whom summary judgment was granted." *Ciardelli v. Rindal*, 582 N.W.2d 910, 912 (Minn.1998). Because no material facts are in dispute in this case, we need only consider whether the applicable law was properly applied.

 Under Minn.Stat. § 290.014, subd. 1 (2000), all net income of a "resident individual" is taxable under Minn.Stat. ch. 290. *See Brun*, 549 N.W.2d at 92–93. The government's right to impose an income tax on its residents is justified by the advantages, rights, and protections it bestows in return. *Luther v. Comm'r of Revenue*, 588 N.W.2d 502, 509 (Minn.1999). It is the "sovereign right" and "ordinary prerogative" of a state to "tax the income of every resident," including "income earned outside the taxing jurisdiction." *Chickasaw Nation*, 515 U.S. at 462–63, 464, 466, 115 S.Ct. 2214.

 In *Brun*, we considered whether Minnesota's income tax could be imposed on a married couple who were enrolled members of the Red Lake Band of Chippewa Indians but who lived off the tribe's reservation. 549 N.W.2d at 92. Citing *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 181, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), we observed that "states are without authority to tax income of tribal members who live and earn their income on a Reservation within the state." *Brun*, 549 N.W.2d at 92. Quoting *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), we also observed, however, that "tribal members 'going beyond Reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State.'" *Brun*, 549 N.W.2d at 92. Ultimately, we concluded that enrolled members of an Indian tribe who are domiciled within the geographic boundaries of the State of Minnesota but who reside off the tribe's reservation are subject to Minnesota's income tax.[4] *Id.* at 93.

4. Relying on federal cases, the Jeffersons argue that *Brun* "wrongly uses 'domicile' as an absolute and irrebuttable presumption." They claim they were not domiciled in Minnesota during the relevant tax period because they were forced off the reservation and intended to return to the reservation as soon as possible. The Jeffersons misconstrue *Brun*. To clarify, we stated that, under Minn.Stat. § 290.014, subd. 1, all net income of a "resident individual" is taxable under Minn.Stat. ch. 290. *Brun*, 549 N.W.2d at 92–93. We further stated that the legislature has defined "resident" as "any individual domiciled in Minnesota." *Id.* at 93; *see* Minn.Stat. § 290.01, subd. 7 (2000). However, we observed that, while these statutory "definitions are instructive, they are not dispositive of the ultimate question with regard to the unique status accorded individuals who, while 'domiciled' within the geographical boundaries of the State of Minnesota, 'reside' on the Reservation." *Brun*, 549 N.W.2d at 93. Thus, we did not create an "irrebuttable presumption" of domicile. Rather, we rejected altogether the relevance of domicile in determining whether a tribal member is subject to Minnesota's income tax under section 290.014, and instead focused on physical residence. *Brun*, 549 N.W.2d at 92–93. Because neither the "[United States Supreme] Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State," the Jeffersons' attempt to refute *Brun* with federal cases fails. *Johnson v. Fankell*, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997); *see also Bush v. Palm Beach County Canvassing Bd.*, 531 U.S. 70, 76, 121 S.Ct. 471, 148 L.Ed.2d 366 (2000). The Jeffersons' argument based on their intent to return to the reservation is therefore irrelevant.

In this case, it is undisputed that the Jeffersons did not reside on the Prairie Island Indian Reservation during the tax years in issue. Accordingly, under *Brun*, the state properly imposed its income tax on the Jeffersons while they resided off their tribe's reservation unless they establish preemption, a violation of the Equal Protection or Uniformity Clauses, or infringement on tribal self-governance.

■■■■ We first consider whether the IGRA precludes the State of Minnesota from imposing its income tax on enrolled members of an Indian tribe who reside within Minnesota but off the tribe's reservation. As we observed in *Brun*, a state has no authority to tax the income of the members of an Indian tribe who live and earn their income on the tribe's reservation within the state. 549 N.W.2d at 92. This has been referred to as the "*McClanahan* presumption against state tax jurisdiction." *Oklahoma Tax Comm'n v. Sac and Fox Nation*, 508 U.S. 114, 123, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993); *see also McClanahan*, 411 U.S. at 170–71, 93 S.Ct. 1257. Significantly, the Supreme Court has rejected the *McClanahan* presumption in cases involving state taxation of Indians who reside within the state but not on the reservation: "In the case of '*Indians going beyond reservation boundaries*,' however, a 'nondiscriminatory state law' is *generally applicable* in the absence of '*express federal law* to the contrary.'" *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144 n. 11, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) (emphasis added) (quoting *Mescalero Apache Tribe*, 411 U.S. at 148–49, 93 S.Ct. 1267; *see Chickasaw Nation*, 515 U.S. at 463–65, 115 S.Ct. 2214. Thus, unless expressly prohibited by federal law, the State of Minnesota may impose its income tax on the Jeffersons.

■■■■ The Jeffersons' preemption argument relies solely on their contention that the IGRA preempts the imposition of Minnesota's income tax. Specifically, the Jeffersons cite a provision of the IGRA that states: "Net revenues from any * * * gaming activities conducted * * * by any Indian tribe may be used to make per capita payments to members of the Indian tribe only if—* * * (D) the per capita payments are subject to Federal taxation and tribes notify members of such tax liability when payments are made." 25 U.S.C. § 2710(b)(3)(D) (1994). Based on this provision, the Jeffersons argue: (1) that the IGRA preempts state laws purporting to prohibit or regulate "Indian gaming that occurs on Indian lands," and that because "the distribution of proceeds [from such gaming] and the Federal taxation of these proceeds is within the sole ambit of IGRA, * * * there is no room for state regulation or taxation of those proceeds, regardless of where the proceeds are collected by Tribal members"; (2) that in situations involving a "pervasive or comprehensive federal regulatory scheme governing a particular aspect of Indian affairs, * * * state laws are preempted if they appear to disturb and disarrange that scheme" (citations and internal quotation marks omitted); (3) that the IGRA's silence on the issue of state taxation means one of two things: either the statute must be given a "literal reading," or it must be declared ambiguous and construed "in favor of the Tribe"; and (4) that the IGRA preempts "the States' civil laws except for agreements reached through State-tribal compacts."

The Jeffersons' arguments fail for the simple reason that section 2710(b)(3)(D) does not *expressly* preempt state taxation of income received by tribal members in the form of per capita payments from reservation gaming activity. Indeed, the Jeffersons themselves observe that the IGRA "does not mention or reference state taxa-

tion." In the absence of any express provision indicating such an intent on the part of Congress, *Chickasaw Nation, Bracker,* and *Mescalero Apache Tribe* lead inexorably to the conclusion that the IGRA does not preclude the State of Minnesota from imposing its income tax on the Jeffersons during periods when they resided within the state but off the Prairie Island Indian Reservation. We therefore reject the Jeffersons' preemption claim.

■ We next consider whether the Equal Protection Clause of the United States Constitution, U.S. Const. amend. XIV, § 1, or the Uniformity Clause of the Minnesota Constitution, Minn. Const. art. X, § 1, are violated when the state imposes its income tax on members of an Indian tribe who reside off the tribe's reservation but not on tribal members who reside on the reservation. The scope of protection afforded by the Equal Protection Clause and the Uniformity Clause is "identical." *Kuiters v. County of Freeborn,* 430 N.W.2d 461, 463 (Minn.1988).

■ The Jeffersons argue that an unlawful racial classification exists because the State of Minnesota differentiates between those Indians who reside on the reservation within the state, and those Indians who reside off the reservation within the state. This claim is devoid of merit. The state's decision to tax Indians who reside off the reservation is not based on their race, but rather on the place where they reside. As noted above, it is a state's "sovereign right" and "ordinary prerogative" to "tax the income of every resident," including income earned outside the state. *Chickasaw Nation,* 515 U.S. at 462–63, 464, 466, 115 S.Ct. 2214. By taxing Indians who live outside Indian country, the state is not singling them out based on race, but is treating them like every other individual within its taxing jurisdiction.

Thus, the Jeffersons' Equal Protection Clause and Uniformity Clause claims fail.

■ Finally, we address whether the State of Minnesota infringes on tribal self-governance by imposing its income tax on tribal members residing off the tribe's reservation but within the State of Minnesota. "The exercise of state authority may also be barred by an independent barrier—inherent tribal sovereignty—if it unlawfully infringe[s] on the right of reservation Indians to make their own laws and be ruled by them." *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 334 n. 16, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (citations and internal quotation marks omitted).

■ Beyond the bald assertion, the Jeffersons have not offered, either in their brief to this court or at oral argument, a clear explanation as to how the imposition of Minnesota's income tax on tribal members residing off the reservation infringes on tribal self-governance. They do attempt to support their argument by pointing to a purported difference between the way Minnesota treats other states and the way it treats Indian tribes. By way of example, the Jeffersons assert that Minnesota and Wisconsin do not tax each other's employees and do not interfere in each other's self-government. The Jeffersons state that "[t]here may be agreements between two sovereign States, but these are drawn as between equals," and Minnesota "may not and does not interfere in the affairs of its neighboring States." By contrast, the Jeffersons argue that "Minnesota has no qualms about demanding that the tribal government withhold State income taxes and pay these over to Minnesota," and that this "constitutes direct interference."

■ This argument is flawed. Contrary to the Jeffersons' view, a state can

tax the income of its residents, including income earned outside the state's borders.

Although sovereigns have authority to tax all income of their residents, including income earned outside their borders, they sometimes elect not to do so, and they commonly credit income taxes paid to other sovereigns. But "[i]f foreign income of a domiciliary taxpayer is exempted, this is an *independent policy decision and not one compelled by jurisdictional considerations.*"

*Chickasaw Nation,* 515 U.S. at 463 n. 12, 115 S.Ct. 2214 (emphasis added) (citation omitted). Further, in discussing taxes imposed on activity conducted inside Indian country when the legal incidence of the taxes falls on non-Indians, the Court stated that, "if the balance of federal, state, and tribal interests favors the State, and federal law is not to the contrary, the State may impose its levy, and *may place on a tribe or tribal members 'minimal burdens' in collecting the toll."* *Id.* at 459, 115 S.Ct. 2214 (emphasis added) (citations omitted). Therefore, to the extent that the Jeffersons take issue with the requirement that a tribe withhold the state income tax from its per capita payments and forward the amount withheld to the state, such a requirement is hardly sufficient to infringe on tribal self-governance. Accordingly, we conclude that the State of Minnesota does not infringe on tribal self-governance by imposing its income tax on tribal members who reside within the state but off the tribe's reservation.

We hold that the tax court's grant of summary judgment in favor of the Minnesota Commissioner of Revenue was proper.

Affirmed.